# ATTACHMENT 1

## STATE COURT COMPLAINT

| | |
|---|---|
| STATE OF MAINE<br>OXFORD, SS. | SUPERIOR COURT<br>CIVIL ACTION<br>DOCKET NO. CV-09-____ |

NEPW LOGISTICS, INC., )
)
   Plaintiff, )
)
v. )
) **COMPLAINT FOR**
THE TRAVELERS INDEMNITY CO., CRUM ) **DECLARATORY RELIEF**
& FORSTER and THE NORTH RIVER )
INSURANCE CO., )
)
   Defendants. )

Plaintiff NEPW Logistics, Inc. ("NEPW") files this Complaint for declaratory relief pursuant to M.R.Civ.P. 57 and 14 M.R.S. §§ 5951-5963 against Defendants The Travelers Indemnity Co. ("Travelers") and Crum & Forster and The North River Insurance Co. (together, "Crum & Forster") as follows:

## NATURE OF THE ACTION

1. A catastrophic three-day fire that burned from December 3 through December 5, 2008 severely damaged NEPW's warehouse in South Paris, Maine and destroyed an estimated 10,000 tons of stored pulp and paper owned by NEPW's customers, valued in excess of $5 million. Notwithstanding that NEPW has available coverage under several different insurance policies issued by Travelers and Crum & Forster with combined liability limits of $16 million, Travelers and Crum & Forster have refused to adjust and pay the claims of NEPW's customers for their damaged property. Instead, both Travelers and Crum & Forster have spent their energy pointing their fingers at each other, ignoring the documentation in support of the customers'

claims that they have had in their possession since January 2009, and generally disregarding the damage their intransigence has caused their insured, NEPW.

2.  In this action, NEPW prays that the Court order Travelers and Crum & Forster to immediately acknowledge, adjust and pay NEPW's customers' claims in accordance with their duties under the insurance policies and 24-A M.R.S. § 2436-A, reserving their rights to dispute their respective excess/primary positions and the relative culpability of the insured parties until after NEPW's innocent customers have been made whole.

## PARTIES AND VENUE

3.  Plaintiff NEPW Logistics, Inc., a corporation organized and existing under the laws of the State of Maine, with its principal place of business in the Town of South Paris, Oxford County, Maine, is one of New England's leading pulp and paper storage companies with warehouses in seven Maine locations, including a 233,000 square foot warehouse in South Paris, Maine (the "Warehouse").

4.  Defendant The Travelers Indemnity Company is an insurance corporation authorized to do business in the State of Maine that insures Bancroft Contracting Corporation ("Bancroft") under a $2 million commercial general liability policy and a $9 million excess liability policy, which policies not only insure Bancroft for its own liability, but also provide contractual liability insurance for Bancroft's indemnity obligations and a Blanket Additional Insured Endorsement that makes NEPW an "additional insured." Travelers also provides liability coverage to Hi-Tech Sprinkler, the company that installed and maintained the sprinkler system in the Warehouse.

5. Defendant Crum & Forster is an insurance corporation authorized to do business in the State of Maine that insures NEPW under a $5 million warehouse legal liability policy issued through its affiliate, The North River Insurance Co.

6. Defendant The North River Insurance Co. is an insurance corporation authorized to do business in the State of Maine that insures NEPW under a $5 million warehouse legal liability policy. The North River Insurance Co. and its affiliate Crum & Forster are collectively referred to herein as "Crum & Forster."

7. Venue is proper in this Court because NEPW maintains its principal place of business in Oxford County and the fire occurred on property located in Oxford County.

## STATEMENT OF FACTS

8. In the fall of 2008, Bancroft Contracting Corporation ("Bancroft"), also located in South Paris, Maine, contracted with NEPW to repair a portion of the Warehouse roof and pursuant to that contract, Bancroft agreed to indemnify NEPW for all claims against NEPW arising out of Bancroft's work and name NEPW as an additional insured under Bancroft's liability insurance policies.

9. On or about December 3, 2008, an employee of Bancroft, while welding on the Warehouse roof, caused hot slag to ignite stacks of open bales of shredded paper, creating a fire that burned for more than three days and required fire departments from more than forty Maine municipalities to extinguish (the "Fire"), such that the Town of South Paris alone incurred more than $46,000 of fire suppression expenses.

10. The Fire damaged and/or destroyed an estimated 10,000 tons of stored pulp and paper owned by NEPW's customers, valued in excess of $5 million.

11. Between December 3 and December 5, 2008, Travelers and Crum & Forster both sent investigators to the Warehouse to determine the cause of the Fire and thereafter retained experts to further opine on causation.

12. Between December 3 and December 5, 2008, Crum & Forster engaged a subrogation attorney and expert witness to gather evidence for a subrogation claim against potentially responsible parties, even before investigating the nature and extent of NEPW's damages or the claims against its insured.

13. The Maine State Fire Marshal investigated the Fire and issued a report at the end of January 2009, determining the "direct cause" of the fire to be "welding being conducted overhead and dropping slag over and behind . . . stacks of open bales of shredded paper." A true and accurate copy of the State Fire Marshal's Report is attached hereto as Exhibit A.

14. The pulp and paper stored in the Warehouse is mostly owned by a small group of primarily Canadian-based pulp and paper manufacturers, and NEPW's business is largely dependent on the goodwill and satisfaction of this limited group of customers.

15. On or about January 14, 2009, NEPW provided to Travelers and Crum & Forster all the materials necessary to begin adjusting its customers' claims and to advance payments to customers for undisputed sums. At regular intervals thereafter, NEPW has provided Travelers and Crum & Forster with updated information and responded to all questions, including providing several duplicate copies of the relevant documents.

16. On or before January 14, 2009, NEPW demanded that Travelers, Bancroft's liability insurer, adjust and pay NEPW's customers' claims on three grounds: 1) the negligence of its insured, Bancroft, caused the damage to the customers' property stored in the Warehouse; 2) Travelers insures Bancroft's contractual obligation to defend and indemnify NEPW from

claims arising out of the performance of Bancroft's work; and 3) NEPW is an additional insured under the Travelers policies and therefore Travelers has a direct duty to NEPW to adjust and pay the customers' claims.

17. On or before January 14, 2009, NEPW demanded that its own warehouse insurer, Crum & Forster, adjust and pay the customers' claims and work with Travelers to achieve a prompt resolution of those claims so as to preserve NEPW's business relationships with important customers whose property was damaged through no fault of their own.

18. By e-mails dated January 27, February 10 and February 12, 2009, NEPW further provided Travelers and Crum & Forster detailed Excel spreadsheets showing product inventories for all customers at the time of the Fire, as well as all documentation maintained by NEPW concerning the customer product at the Warehouse at the time of the Fire.

19. NEPW has continuously reported to Travelers and Crum & Forster their customers' growing frustrations with the delay in the claims process, as well as the fact that NEPW has a very concentrated customer base, and loss of any single customer could jeopardize NEPW's viability as a continuing business.

20. NEPW assumed that Travelers and Crum & Forster were promptly and actively processing the customer claim materials it provided in January and February 2009. However, on or about March 20, 2009, a full nine weeks after NEPW first provided materials supporting partial payments of undisputed sums, Crum & Forster's accountant told NEPW counsel that she had not even begun to review the customers' claims. In a similar conversation on or about March 30, 2009, Travelers' accountant also told NEPW counsel that he had done very little work with respect to the customers' claims.

21. NEPW's counsel expressed their concern regarding the accountants' statements to counsel for Crum & Forster and Travelers in writing on March 31, 2009 and April 2, 2009, respectively. *See* Letter from Louise Thomas (NEPW counsel) to Edward Farman (Crum & Forster counsel) dated April 2, 2009, attached hereto as Exhibit B; E-mail from Lucus Ritchie (NEPW counsel) to John Lucy (Bancroft/Travelers counsel) dated March 31, 2009, attached hereto as Exhibit C.

22. Because of the unwillingness of either Travelers or Crum & Forster to adjust the customers' claims, NEPW's employees have worked in harsh, often dangerous conditions to extract and salvage as much damaged product as possible in order to mitigate the ultimate claims and attempt to retain its customer relationships. In addition, NEPW has been forced to incur significant costs to defend, adjust and mitigate the customers' claims on its own.

23. There is no assertion by any party that NEPW's customers are responsible in any way for the Fire and there is no dispute that the customers are entitled to be made whole for their damaged and/or destroyed pulp and paper. For that reason, NEPW has repeatedly proposed that Travelers and Crum & Forster pay the innocent customers the undisputed amounts of their claims immediately in order that NEPW may retain their goodwill, and that the insurers reserve for a later date their rights to dispute their respective excess/primary positions and the relative culpability of the insured parties.

24. As of June 2009, six months after the information necessary to adjust the customers' claims was first provided, and seven months after the date of the loss, Travelers and Crum & Forster have made no effort to review and adjust the customers' claims, choosing instead to spend their time arguing over which insured party is responsible to pay the claims and which carrier is primary and which is excess.

25. NEPW's relationships with its customers have been and continue to be damaged as a result of the failure of Travelers and Crum & Forster to adjust and pay the customers' claims.

26. Under the terms of their insurance policies and 24-A M.R.S. § 2436-A, Travelers and Crum & Forster must acknowledge, review and adjust the customers' claims without regard to which carrier is excess or primary.

27. As a matter of common law, Travelers and Crum & Forster have the duty to consider on an equal footing the interests of their insured, NEPW, as well as their own pecuniary interests, when performing their duties under the insurance policies.

### FACTS PERTAINING TO TRAVELERS' INSURANCE OBLIGATIONS

28. At the time of the Fire, Bancroft had a $2 million commercial general liability policy and a $9 million excess liability policy issued by Travelers (together, the "Travelers Policy"). A true and accurate copy of all pertinent portions of the Travelers Policy is attached hereto as Exhibit D.

29. The Insuring Clause of the Travelers Policy provides general liability coverage as follows:

> 1. Insuring Agreement
>
>    a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies.

30. Because the Fire was caused by Bancroft's negligence in welding over stacks of open bales of shredded paper and dropping highly incendiary slag onto that paper, Bancroft is legally obligated to pay for the property damage suffered by NEPW's customers.

31. In addition, the coverage provided by the Travelers Policy explicitly applies to Bancroft's contractual liability "[a]ssumed in a contract or agreement that is an 'insured

contract', provided the 'bodily injury' or 'property damage' occurs subsequent to the execution of the contract or agreement."

    32.   "Insured contract" is defined to mean:

        f.   That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

    33.   Under the terms of the Travelers Policy, the attorneys' fees and litigation expenses of the party indemnified are also covered.

    34.   Article VII of the contract entered between Bancroft and NEPW mandates that Bancroft indemnify, defend, protect and hold harmless NEPW from and against all claims arising out of the performance of Bancroft's work at the Warehouse. The specific language of the indemnification provision is as follows:

> ARTICLE VII
> INDEMNIFICATION: Contractor [Bancroft] shall indemnify, defend, protect and hold harmless the owner [NEPW], owner's officers, directors, shareholders, partners and employees (each individually an "Indemnitee") from and against all claims, demands, causes of action, damages, liabilities, losses and expenses, including without limitation attorney's and consultant's fees and expenses, arising out of or resulting from performance of the Work by, or acts or omissions of Contractor, a Subcontractor, its suppliers or anyone directly or indirectly employed by any of them or anyone for whose acts they may be liable, regardless of whether or not such claim, damage, loss or expense is caused in part by any party Indemnitee. Such obligation shall not extend to claims, demands cause of action or damage resulting from the negligence or misconduct of an Indemnitee. Nothing herein shall abridge the rights of the Contractor to seek contribution where appropriate.

A true and accurate copy of the Bancroft contract is attached hereto as Exhibit E.

    35.   Because Bancroft assumed the tort liability of NEPW for claims arising out of the performance of Bancroft's work in its contract with NEPW, Travelers has a duty to defend and

indemnify NEPW from and against the customers' claims, as well as indemnify NEPW for the costs it has incurred to defend, adjust and mitigate those claims on its own.

36. The Travelers Policy also includes a Blanket Additional Insured Endorsement that names as an "additional insured" any person or organization that the insured agrees in a "written contract requiring insurance" to include as an additional insured to the Travelers Policy:

> 1. WHO IS AN INSURED – (Section II) is amended to include any person or organization that you agree in a "written contract requiring insurance" to include as an additional insured on this Coverage Part, but:
>
>    (a) Only with respect to liability for "bodily injury," "property damage" or "personal injury"; and
>
>    (b) If, and only to the extent that, the injury or damage is caused by acts or omissions of you or your subcontractor in the performance of "your work" to which the "written contract requiring insurance' applies. The person or organization does not qualify as an additional insured with respect to the independent acts or omissions of such person or organization.
>
> 2 "Written contract requiring insurance" is defined as follows:
>
> "Written contract requiring insurance" means that part of any written contract or agreement under which you are required to include a person or organization as an additional insured on this Coverage Part, provided that the "bodily injury" and "property damage" occurs and the "personal injury" is caused by an offense committed:
>
>    a. After the signing and execution of the contract or agreement by you;
>
>    b. While that part of the contract or agreement is in effect; and
>
>    c. Before the end of the policy period.

37. Article VI of the contract entered between Bancroft and NEPW expressly provides that Bancroft will obtain a liability insurance policy and name NEPW as an additional insured on that policy.

38. Because the Bancroft contract with NEPW is a written contract requiring Bancroft to name NEPW as an additional insured under Bancroft's insurance policies, Travelers owes NEPW the duties its owes an insured with respect to claims for the damage caused by the Fire.

39. Travelers has refused to adjust and pay NEPW's customers' claims on the grounds that Crum & Forster is responsible to pay the first $5 million of those claims, as more fully explained in the letter of Gregory Winsor (Travelers) to Louise Thomas (NEPW counsel) dated January 27, 2009, attached hereto as Exhibit F.

40. Upon information and belief, Travelers has not analyzed the data in support of the customers' claims that it has had in its possession since January 2009 for the purpose of ascertaining the appropriate adjustment of those claims.

### FACTS PERTAINING TO CRUM & FORSTER'S INSURANCE OBLIGATIONS

41. In consideration for a premium paid, Crum & Forster issued warehouseman's legal liability coverage with a $5 million limit to NEPW for the policy period February 16, 2008 to February 16, 2009 (the "Crum & Forster Policy"). A true and accurate copy of all pertinent portions of the Crum & Forster Policy is attached hereto as Exhibit G.

42. The Insuring Clause of the Crum & Forster Policy provides warehouse liability coverage as follows:

> A.   COVERAGE
>
> We will pay those sums you become legally obligated to pay as damages, imposed on you as a warehouseman or bailee, for direct physical "loss" to Covered Property from any of the Covered Causes of Loss.

43. "Covered Property" is defined as "tangible personal property of others in your care, custody or control as a warehouseman or bailee and only while such property is located on the 'premises' of the locations shown in this Coverage Form Declarations."

44. The pulp and paper owned by NEPW's customers which was damaged as a result of the Fire is "Covered Property."

45. Crum & Forster has known since at least January 27, 2009 that Travelers has refused to adjust and pay the customers' claims on the grounds that Crum & Forster, as NEPW's warehouse insurer, is primarily liable for the customers' losses.

46. Within days of the Fire, Crum & Forster dispatched a team of experts and lawyers to investigate and document its subrogation rights of recovery from third parties in the event that it paid claims arising out of the Fire and, upon information and belief, Crum & Forster completed its investigation of the cause of the Fire within weeks of the Fire, concluding that Bancroft was responsible for the damages suffered as a result of the Fire.

47. Between January and April of 2009, counsel for NEPW had numerous communications with counsel for Crum & Forster to try to work out a methodology to pay the customers some portion of their damages while preserving Crum & Forster's rights against Bancroft and its liability insurer, Travelers.

48. At the request of counsel for Crum & Forster, counsel for NEPW developed a detailed plan for a staged resolution of the customers' claims whereby the customers would receive partial payments for their claims as a way to retain their goodwill and yet assure Crum & Forster that each claim would be thoroughly

investigated and adjusted. After much discussion, counsel for NEPW memorialized the proposed plan in a letter to counsel for Crum & Forster dated March 24, 2009.

49. Crum & Forster never responded to NEPW's proposed plan outlined in the March 24, 2009 letter or suggested any other way to make partial payments to NEPW's customers while preserving all of Crum & Forster's rights.

50. The first time Crum & Forster notified NEPW that it would not pay the customers' claims was by letter dated May 22, 2009 from Joseph Price (Crum & Forster) to Drew Gilman (NEPW), attached hereto as Exhibit H.

51. In oral communications with NEPW's broker, Crum & Forster justified its refusal to adjust the customers' claims on the grounds that most of the customers had their own insurance, albeit with large deductibles, and that Crum & Forster would deal with the claims when the customers own carriers tried to subrogate against it.

52. Upon information and belief, the first time Crum & Forster demanded that Travelers pay the customers' claims and offered to work with Travelers for prompt resolution of those claims was by letter of May 22, 2009 from Joseph Price (Crum & Forster) to Greg Winsor (Travelers), attached hereto as Exhibit I.

53. On or about June 9, 2009, without consulting NEPW or providing any advance notice, Crum & Forster sent letters to all of NEPW's customers advising them that Travelers, not Crum & Forster, is the primary carrier for the recovery of their damages.

54. Upon information and belief, Crum & Forster has not analyzed the data in support of the customers' claims which it has repeatedly requested for the purpose of ascertaining the appropriate adjustment of those claims

## COUNT I
### Declaratory Relief Pursuant to M.R.Civ.P. 57 and 14 M.R.S. § 5955
(Travelers' Indemnity Obligations)

55.   NEPW repeats and realleges the allegations set forth in paragraphs 1 through 54 of the Complaint and incorporates the same herein by reference.

56.   The Travelers Policy explicitly provides Bancroft coverage for contractual liability "[a]ssumed in a contract or agreement that is an 'insured contract', provided the 'bodily injury' or 'property damage' occurs subsequent to the execution of the contract or agreement."

57.   Under the terms of the Travelers Policy, the attorneys' fees and litigation expenses of the party indemnified are also covered.

58.   Article VII of the contract entered between Bancroft and NEPW mandates that Bancroft indemnify, defend, protect and hold harmless NEPW from and against all claims, demands, causes or action, damages, liabilities, losses and expenses, including without limitation attorneys' and consultants' fees and expenses, arising out of or resulting from the performance of Bancroft's work at the Warehouse, and thus is an "insured contract" as defined by the Travelers Policy.

59.   Because Bancroft assumed the tort liability of NEPW for claims arising out of the performance of Bancroft's work in its contract with NEPW, Travelers has a duty to defend and indemnify NEPW from and against the customers' claims, as well as indemnify NEPW for the costs it has incurred to defend, adjust and mitigate those claims on its own.

60.   As a result of Travelers' failure to defend and indemnify NEPW against the customers' claims, NEPW has been forced to incur significant costs to defend, adjust and mitigate those claims on its own.

WHEREFORE, NEPW respectfully requests that this Court enter a judgment, pursuant to M.R.Civ.P. 57 and 14 M.R.S. § 5955, declaring that Travelers has a duty under the contractual liability provision of the Travelers Policy to defend and indemnify NEPW against the customers' claims, as well as indemnify NEPW for the costs it has incurred to defend, adjust and mitigate the customers' claims.

## COUNT II
### Declaratory Relief Pursuant to M.R.Civ.P. 57 and 14 M.R.S. § 5955
(NEPW's Status as an "Additional Insured" under the Travelers Policy)

61. NEPW repeats and realleges the allegations set forth in paragraphs 1 through 60 of the Complaint and incorporates the same herein by reference.

62. Article VI of the contract entered between Bancroft and NEPW expressly provides that Bancroft will obtain a liability insurance policy and name NEPW as an additional insured on that policy.

63. Under the terms of the Travelers Blanket Additional Insurance Endorsement, NEPW is an organization that Bancroft agreed in a "written contract requiring insurance" to include as an "additional insured" and therefore NEPW is an additional insured under the Travelers Policy.

64. Because NEPW is an "additional insured" under the Travelers Policy, Travelers owes to NEPW the duty to defend and indemnify NEPW for any claim for bodily or property damage arising out of the Fire, including, but not limited to, the customers' claims for damage to their stored pulp and paper.

WHEREFORE, NEPW respectfully requests that this Court enter a judgment, pursuant to M.R.Civ.P. 57 and 14 M.R.S. § 5955, declaring that NEPW is an "additional insured" under the terms of the Travelers Policy, and that Travelers has a duty to defend and indemnify NEPW for

any claim for bodily or property damage arising out of the Fire, including, but not limited to, the customers' claims.

## COUNT III
### Declaratory Relief Pursuant to M.R.Civ.P. 57 and 14 M.R.S. §§ 5954, 5955
(Travelers' Duty to Acknowledge, Review and Adjust the Customers' Claims)

65. NEPW repeats and realleges the allegations set forth in paragraphs 1 through 64 of the Complaint and incorporates the same herein by reference.

66. In every insurance contract issued in Maine, the insurer has a duty to act in good faith and to deal fairly with its insured and therefore Travelers owes NEPW the duties of good faith and fair dealing and must not subordinate NEPW's interests to its own interests.

67. In addition, Maine's Unfair Claim Practices Statute, 24-A M.R.S. § 2436-A, prohibits insurers from "[f]ailing to acknowledge and review claims, which may include payment or denial of a claim, within a reasonable time following receipt of written notice by the insurer of a claim by an insured arising under the policy."

68. The stated basis for Travelers' failure to acknowledge, review and adjust the customers' claims is Travelers' assertion that Travelers' duty to NEPW as an additional insured under the Travelers Policy is excess to Crum & Forster's duty to NEPW under the Crum & Forster Policy, and therefore Travelers has no obligation to defend or indemnify NEPW against the customers' claims until after the Crum & Forster Policy limits are exhausted.

69. Maine law is clear that "[t]he liability of insurance carriers is joint and several in cases where there are two or more insurance policies applicable to the same loss," and thus "'other insurance' clauses cannot be used by the insurers to defeat liability to their insureds." *Bazinet v. Concord Gen. Mut. Ins. Co.*, 513 A.2d 279, 281 (Me. 1986). Indeed, in Maine, "an insured has the right to proceed against any and all of the carriers who may be liable to him up to

the stated policy limit, and any excess/primary distinction sought to be drawn by an insurer has no bearing on that right." *Id.* Accordingly, Travelers' continued refusal to acknowledge, review and adjust the customers' claims based on arguments that the Travelers Policy is excess to the Crum & Forster Policy is not allowed under Maine law.

70. Travelers has failed to consider on an equal footing the interests of its insured, NEPW, to promptly resolve the customers' claims, instead giving priority to its own pecuniary interests by unnecessarily delaying adjustment and payment of those claims.

71. Because NEPW is an additional insured under the Travelers Policy issued to Bancroft, Travelers has a duty to promptly acknowledge, review and adjust any claims against NEPW for bodily or property damage arising out of the Fire, including, but not limited to, the customers' claims for damage to their stored pulp and paper.

WHEREFORE, NEPW respectfully requests that this Court enter a judgment, pursuant to M.R.Civ.P. 57 and 14 M.R.S. §§ 5954 and 5955, declaring that:

1. Travelers has a duty to promptly acknowledge, review and adjust any claims against NEPW arising out of the Fire, including, but not limited to, the customers' claims;

2. Travelers' duty to adjust the customers' claims cannot be avoided or delayed on the grounds that Crum & Forster is the primary carrier; and

3. Travelers shall cooperate with Crum & Forster to facilitate a prompt adjustment of the customers' claims, reserving for a later date any disputes between Travelers and Crum & Forster.

## COUNT IV
### Declaratory Relief Pursuant to M.R.Civ.P. 57 and 14 M.R.S. §§ 5954, 5955
(Crum & Forster's Duty to Acknowledge, Review and Adjust the Customers' Claims)

72. NEPW repeats and realleges the allegations set forth in paragraphs 1 through 71 of the Complaint and incorporates the same herein by reference.

73. In every insurance contract issued in Maine, the insurer has a duty to act in good faith and to deal fairly with its insured and therefore Crum & Forster owes NEPW the duties of good faith and fair dealing and must not subordinate NEPW's interests to its own interests.

74. In addition, Maine's Unfair Claim Practices Statute, 24-A M.R.S. § 2436-A, prohibits insurers from "[f]ailing to acknowledge and review claims, which may include payment or denial of a claim, within a reasonable time following receipt of written notice by the insurer of a claim by an insured arising under the policy."

75. The stated basis for Crum & Forster's failure to acknowledge, review and adjust the customers' claims is Crum & Forster's assertion that Crum & Forster's duty to NEPW under the Crum & Forster Policy is excess to Traveler's duty to NEPW and Bancroft to resolve the claims and therefore Crum & Forster has no obligation to adjust the customers' claims.

76. Maine law is clear that "[t]he liability of insurance carriers is joint and several in cases where there are two or more insurance policies applicable to the same loss," and thus 'other insurance' clauses cannot be used by the insurers to defeat liability to their insureds." *Bazinet v. Concord Gen. Mut. Ins. Co.*, 513 A.2d 279, 281 (Me. 1986). Indeed, in Maine, "an insured has the right to proceed against any and all of the carriers who may be liable to him up to the stated policy limit, and any excess/primary distinction sought to be drawn by an insurer has no bearing on that right." *Id.* Accordingly, Crum & Forster's continued refusal to acknowledge,

review and adjust the customers' claims based on arguments that the Travelers Policy is excess to the Crum & Forster Policy is not allowed under Maine law.

77.  Crum & Forster has failed to consider on an equal footing the interests of its insured, NEPW, to promptly resolve the customers' claims, instead giving priority to its own pecuniary interests and subrogation rights by unnecessarily delaying adjustment and payment of those claims.

78.  Pursuant to the terms of the warehouse policy it issued to NEPW, Crum & Forster has a duty to promptly acknowledge, review and adjust claims against NEPW arising out of the Fire, including the customers' claims for damage to their stored pulp and paper.

WHEREFORE, NEPW respectfully requests that this Court enter a judgment, pursuant to M.R.Civ.P. 57 and 14 M.R.S. §§ 5954 and 5955, declaring that:

1.  Crum & Forster has a duty to promptly acknowledge, review and adjust any claims against NEPW arising out of the Fire, including, but not limited to, the customers' claims;

2.  Crum & Forster's duty to adjust the customers' claims against NEPW cannot be avoided or delayed on the grounds that Travelers is the primary carrier; and

3.  Crum & Forster shall cooperate with Travelers to facilitate a prompt adjustment of the customers' claims, reserving for a later date any disputes between Travelers and Crum & Forster.

Dated at Portland, Maine this 19th day of June 2009.

_____
Louise K. Thomas, Bar #1284
Lucus A. Ritchie, Bar #9858
PIERCE ATWOOD LLP
One Monument Square
Portland, ME 04101
207-791-1100
*Attorneys for Plaintiff NEPW Logistics, Inc.*